UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MAURICIO CASTELLANOS-
GORRA,

        Petitioner,

      v.

WARDEN OF ALLIGATOR
ALCATRAZ, OFFICIAL
CAPACITY;  MIAMI ICE FIELD
OFFICE DIRECTOR, OFFICIAL
CAPACITY; AND SECRETARY
KRISTI NOEM, OFFICIAL
CAPACITY,

        Respondents.

Case No. 2:26-cv-833-KCD-NPM

_____/

## **ORDER**

Petitioner Mauricio Castellanos-Gorra is a Cuban citizen who has a final order of removal. (Doc. 1-2.)[1] Last year, he was detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging the legality of his continued custody.

The background of the dispute is straightforward. Castellanos-Gorra entered the United States in 1986 and became a lawful permanent resident. Following his conviction for lewd and lascivious assault against a minor, an

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

immigration judge ordered his removal in 2004. (Doc. 1-2; Doc. 7-1 at 2.) Because Castellanos-Gorra is a Cuban national—making his actual deportation unlikely at the time—ICE could not immediately effectuate his return. So the Government released him on an order of supervision, which is essentially a form of immigration parole. Then, during a routine check-in on October 25, 2025, ICE arrested him, revoked his release, and put him behind bars. He has been detained ever since. In November, ICE provided Castellanos-Gorra a notice of intent to remove him to Mexico. (Doc. 7-2.)

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to

effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678, 699 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Applied here, Castellanos-Gorra satisfies the initial temporal requirement. ICE took him into custody nearly seven months ago. Because

the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies.

Castellanos-Gorra has carried his initial burden of showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. (Doc. 1.) He does so by pointing to a stubborn diplomatic reality: he is a citizen of Cuba, and Cuba is currently embroiled in political conflict with the United States. As his petition details, the Cuban government is not issuing travel documents and has a history of refusing returnees. Indeed, the Government has had nearly two decades to deport Castellanos-Gorra, and it has failed. This is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Castellanos-Gorra's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that he will be removed in the near future. Although the Government's response mentions that Castellanos-Gorra refused removal to Mexico (Doc. 7 at 5), there is no further information provided. Thus, the Court ordered the Government to provide more details about those attempted removals (Doc. 12). The Government's response? Crickets. Nothing was filed in response to the Court's order. Because the

Government offers nothing to suggest removal is more likely now than it was months ago, Castellanos-Gorra must be released.

It is easy to see why this outcome might cause unease. Castellanos-Gorra is a convicted criminal. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for over ten years without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 682. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Castellanos-Gorra will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his order of supervision.

To the extent Castellanos-Gorra's petition raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Mauricio Castellanos-Gorra from custody within 48 hours of this Order under the prior conditions of supervision, which he must continue to comply with. Respondents shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on May 20, 2026.

Kyle C. Dudek
United States District Judge

6